## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS PREMIER SOCCER, LLC, d/b/a "Global Premier Soccer," <br><br> Plaintiff <br><br> v. <br><br> SURF CUP SPORTS, LLC, d/b/a "New England Surf Soccer Club," "South Carolina Soccer Club," and "San Diego Surf Soccer Club," LUKE KRAWCZYK, and ANDREW PROSSER, <br><br> Defendants, | Civil Action No. 20-cv-10430-WGY |

### AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Massachusetts Premier Soccer LLC, d/b/a "Global Premier Soccer" ("GPS"), hereby states its Amended Complaint and Jury Demand against Defendants Surf Cup Sports, LLC  (d/b/a "South Carolina Soccer Club," "New England Surf Soccer Club," and "San Diego Surf Soccer Club") ("Surf Club"), Luke Krawczyk ("Krawczyk"), and Andrew Prosser ("Prosser"), as follows:

### Nature of the Action

1.      Defendants have coordinated unlawful activities with each other and others to expand Surf Club from a west coast youth soccer program to include east coast operations from New England down through and including South Carolina. Among other things, Defendants have converted social media pages used and managed by GPS into Surf Club pages, falsely

associating the two brands and falsely holding Surf Club out to thousands of customers and families of soccer players as if it had the history, accomplishments and more than 20 positive five-star out of five-star reviews of GPS on the east coast, even though Surf Club is launching new operations where it has had no track record in the particular east coast locations. This and other false advertising and promotion by Surf Club misleads and confuses thousands of customers and families, including those who have affirmatively elected to "like" or "follow" the content of GPS pages only to now falsely display on each of their social media pages that they now "like" or "follow" what appears to be a Surf Club page, without having chosen to do so. As part of the efforts of raiding GPS's east coast activities for the benefit of Surf Club, Krawczyk and Prosser have intentionally breached and caused others to breach non-competition and non-solicitation provisions. The totality of damages and other harm caused by Defendants is impossible to calculate fully, requiring prompt injunctive relief to stop this and related unlawful practices and actions by Defendants.

## Parties

2.      Plaintiff GPS is a Massachusetts limited liability company with a principal place of business located at 85 Central Street, Suite 204, Waltham, Massachusetts 02453, in Middlesex County. GPS is involved in the business of development and growth of youth soccer across North America and world-wide.

3.      Defendant Surf Club is a limited liability company formed under the laws of California with its principal place of business in California, and controls the registrant of the trademark "Surf Soccer Club," at the United States Patent and Trademark Office. At relevant times, Surf Club has regularly done business in Massachusetts, including its unlawful activities that give rise to the claims herein. Nevertheless, the website for the California Secretary of State

2

displays Surf Club as suspended. Further, Surf Club has failed to register with the Secretary of the Commonwealth of Massachusetts despite doing business here.

4.     Defendant Krawczyk is a resident of South Carolina who worked for Massachusetts-based GPS at relevant times. Also at relevant times, Krawczyk held himself out as a Massachusetts-based "scout" for the Boston Breakers, a Massachusetts professional women's soccer team, in order to obtain a P-1 visa that allowed his entry into and stay in the United States. -Further, at relevant times, Krawczyk has directed activities in Massachusetts in connection with the acts giving rise to the claims herein, intentionally breached obligations owed to Massachusetts-based GPS, intentionally caused GPS to suffer injuries in Massachusetts, and conspired with Defendants Surf Club and Prosser, as well as former GPS employees bound by their own restrictive covenants such as Tommaso Trevisan and Tyral Hicken, and Union Point Soccer LLC ("Union Point") and others who have acted as Krawczyk's agents in Massachusetts when acting in furtherance of the Defendants' conspiratorial activities to benefit Surf Club unlawfully at GPS's expense. Krawczyk has spent substantial time in Massachusetts with respect to the events giving rise to this action, including at executive summits in Massachusetts at which GPS provided him with training and development in marketing and leadership as part of the consideration for Krawczyk undertakings not to compete with GPS while employed by it and for 12 months following his employment. While still working for GPS, Krawczyk acted as a faithless employee serving his own interests and the interests of Surf Club by encouraging town soccer clubs to stop doing business with GPS and instead to do business with Surf Club, which Krawczyk later joined. By late February 2020, Krawczyk held himself out as an employee of Surf Club, which is a competitor of GPS.

5.      Defendant Prosser is a resident of Massachusetts who worked for Massachusetts-based GPS at relevant times. Contrary to litigation hold instructions that he received from GPS in connection with the execution of a Search Warrant by federal law enforcement agents investigating conduct in which he participated with others, on or about December 5, 2019, Prosser improperly caused Gavin MacPhee to destroy Prosser's entire GPS email account in Massachusetts to hide his statements and activities. Upon information and belief, in statements against his personal interest, MacPhee has admitted his guilt on federal obstruction charges to federal law enforcement. By late February 2020, Prosser held himself out as an employee of Surf Club working full time in and out of Massachusetts.

6.      Though not named as a defendant, Union Point is a party in interest and a limited liability company formed and registered, on or about February 16, 2017, under the laws of Massachusetts, with members who are citizens of Massachusetts. According to state filings, Union Point was formerly known as Global Premier Soccer Real Estate Massachusetts LLC and, on or about January 13, 2020, changed its name to Union Point Soccer LLC. The registered manager of Union Point is Joseph Bradley, and the address for him as the registered agent of Union Point is 12 Coyne Road in Waban, Massachusetts.

**Jurisdiction and Venue**

7.      This Court has federal question jurisdiction over GPS's Complaint under 28 U.S.C. § 1331.

8.      Venue is appropriate in the District of Massachusetts because the claims herein arise from activities that occurred in substantial part in this District and caused GPS to suffer injuries at issue in this District, where at least Defendant Prosser resides.

**Background**

9.      On or about July 11, 2017, Union Point reached an agreement with GPS to make GPS a long-term anchor tenant for the use of soccer fields in Weymouth, Massachusetts. At that time through late 2019, owners and managers of Union Point, including its managing member, Joseph Bradley, held executive positions at GPS, making them privy to confidential and proprietary information belonging to GPS, including details of customer relationships at GPS.

10.      Defendants Prosser and Krawczyk reported to Joseph Bradley and his brother at GPS, while both of the Bradleys also managed Union Point. All of them became quite close to each other.

11.      At relevant times since prior to 2018 through in or about December 2019, Defendant Prosser held various positions at Massachusetts-based GPS including, in 2019, the role of National Premier Director with responsibility over regional managers and others, including Defendant Krawczyk.

12.      At relevant times from no later than in or about April 2018 through in or about February 2020, Krawczyk played various roles as a General Manager of Massachusetts-based GPS, providing services for it in Massachusetts, Maine, Missouri, North Carolina and South Carolina. Krawczyk spent substantial time in Massachusetts on GPS business, which enabled him to have greater access to GPS's business information and goodwill. GPS provided high-level training and leadership development to, and shared strategic plans for customer relationships with, Krawczyk in Massachusetts, including two executive summits that Krawczyk attended in Massachusetts in 2019, which constituted GPS's consideration for Krawczyk's non-compete undertakings, which form a substantial portion of the bases for the claims against him.

13.     On or about October 8, 2019, federal agents of the United States Department of Homeland Security executed a Search Warrant at a location used by GPS in Waltham, Massachusetts. The investigation has been focused on activities of certain individuals who conspired to obtain visas for foreign youth soccer coaches by falsely holding them out as camp counselors or professional scouts. GPS has provided voluminous documents to federal investigators. To get his own P-1 visa, Krawczyk pretended to be a scout for a professional women's team in Massachusetts when he actually was focused on coaching male youth players.

14.     Promptly after the execution of the Search Warrant, GPS implemented a litigation hold in response to the federal criminal investigation, providing company-wide instructions that reached Defendants Prosser and Krawczyk.

15.     GPS replaced the CEO, Joseph Bradley, who has since still managed Union Point. Federal prosecutors have assured GPS that GPS is not a target of the criminal investigation.

16.     Since Joseph Bradley's departure from GPS during the federal investigation, Surf Club has worked with Joseph Bradley and Union Point in efforts to expand into east coast activities by diverting away from GPS business, employees, coaches and customer relationships.

17.     On or about December 5, 2019, Defendant Prosser wrongfully instructed MacPhee at GPS to delete Prosser's GPS email account despite their awareness that federal law enforcement had seized Prosser's laptop. MacPhee has admitted to such misconduct as a federal felony of obstruction of a federal investigation. By early 2020, Defendant Prosser made efforts to solicit GPS employees, coaches and customers to join Surf Club.

18.     By early 2020, while employed by GPS but unknown to new management, Defendant Krawczyk also made efforts to recruit other GPS employees to leave the company and join Surf Club.

**Surf Club's False Advertising and Promotion on Social Media**

19.    During his time working at GPS, Defendant Krawczyk performed roles for GPS that included management of certain social media pages.

20.    In exchange for continued employment and other consideration including training and leadership development, which GPS provided in substantial part to Krawczyk while he spent substantial time in Massachusetts, Krawczyk had undertaken non-competition and non-solicitation obligations owed to GPS for 12 months following the termination of his employment.

21.    In particular, on or about March 10, 2014, Krawczyk signed a contract in which, among other things, Krawczyk agreed to be bound by the terms of GPS's applicable employment policy manual, acknowledged that he would be privy to private and confidential information of GPS in his role, and agreed for twelve (12) months following the termination of his employment to refrain from participating as a "principal, manager, coach, agent, officer, employee, consultant or otherwise" in any business, organization or club that competes with the business of GPS in the soccer industry. A copy of the March 10, 2014 agreement is attached as Exhibit A hereto.

22.    On or about October 2, 2014, Krawczyk signed a second non-compete contract with GPS, where he, in substance, reaffirmed his non-competition covenants within any state where GPS operates and confidentiality obligations, and also agreed to non-solicitation obligations with respect to any of the company's current, former or prospective customers and employees. A copy of the October 2, 2013 contract is attached as Exhibit B. In addition to signing his own non-compete agreement in this form, Krawczyk witnessed the signing of a number of other employees' non-competes in this form.

23.    In both agreements, Defendant Krawczyk also committed to pay GPS for its attorneys' fees enforcing this non-competition provision and other contractual obligations.

24.     GPS used and managed social media pages, including Facebook pages for each of the following town clubs:

     a.   GPS NASA (North Area Soccer Association);

     b.   GPS Coastal Academy, a/k/a Southside;

     c.   GPS Charleston; and,

     d.   GPS Carolina.

25.     By on or about February 24, 2020, the first two of these social media pages, for GPS NASA and GPS Coastal Academy, had been moved and/or redirected to, respectively, https://www.facebook.com/SCSurfNASA/ (the "Surf NASA page") and https://www.facebook.com/SCSurfSouthside/ (the "Surf Southside page").

26.     GPS has managed the Surf NASA page and the Surf Southside page since in or about 2015. Prior to that, town soccer associations had sporadically used those pages. Nobody provided notice to GPS or requested control over the Surf NASA page or the Surf Southside page, but instead Defendants Surf Club and Krawczyk misled and confused the audiences as part of a scheme by the Defendants to raid GPS's employees, coaches and customers.

27.     On the Surf NASA page, the content of prior entries for GPS NASA still appears, but with new headers and profile imaging at the top and the Surf Club name replacing the GPS game. A large banner appears at the top of the page stating "Welcome to the Surf Family!" along with logos for "South Carolina Surf Soccer Club." By so doing, Surf Club benefits from the history, activity, positive comments and positive reviews of GPS, among other goodwill.

28.     The content on the Surf NASA page dates back before 2018, with past entries and comments by actual and prospective clients now attributing to Surf Club each of the many

events, reviews and accomplishments that should be attributed to GPS. Yet at the top of each entry appears "SC Surf Soccer Club – North Area Soccer Association."

29.     As a result, Defendants Krawczyk and Surf Club have intentionally and willfully made materially false and misleading statements in advertising and promotion. They falsely state on the GPS NASA social media pages that Surf Club is affiliated with GPS. They falsely take credit for the history and accomplishments of GPS. They falsely claim the right to positive comments and reviews.

30.     As of the date in February 2020 when Defendants Krawczyk and Surf Club usurped control over the GPS NASA page, there were approximately 1,983 people, including actual and prospective customers of GPS, who had liked the page and approximately 2,020 who had followed the page.

31.     Because of the conversion of the GPS NASA page to Surf Club's use, for those people who liked or followed the page, their Facebook pages falsely display as a fact that they liked or followed Surf Club, when those individuals had in fact chosen to like or follow a GPS social media page.

32.     Defendants Krawczyk and Surf Club similarly converted the GPS Coastal Academy social media page. For that page, approximately 1,123 people had liked it as a GPS page, and approximately 1,147 people had followed it as a GPS page, but those likes and follows now appear as if they were chosen for Surf Club, which is false. Surf Club also usurped a 5-star out of 5-star rating from GPS Coastal Academy's social media page that is actually a review of GPS falsely presented as a review of Surf Club.

33.     On February 1, 2020, GPS's contract with the Coastal Academy town club renewed for five years. A copy of the contract with Coastal Academy is attached hereto as

Exhibit C. Nevertheless, Surf Club and Krawczyk intentionally caused Coastal Academy to breach the contract by trying to terminate it contrary to the terms of the contract.

34.     With respect to the GPS Charleston and GPS Carolina pages, Defendants Krawzcyk and Surf Club have not yet changed the content, but Krawzcyk did not transition master account access to GPS for those pages.

35.     GPS's corporate policies prevented Krawczyk and other GPS employees from conducting these sorts of social media activities on social media accounts outside of GPS. An applicable GPS employee handbook provides in pertinent part:

> All personal social media channels should be private. This prevents players and parents being able to view any of your social media platforms. In no instance should coaches have their players on their personal social media platforms. To reiterate, your personal Snapchat, Instagram, Facebook, Twitter etc. should not be accessible by any LGS and/or GPS players or parents. You must not accept or, request player and parents to view your social media.

36.     In addition, the same employee handbook obligated Krawczyk to respect GPS's ownership of information about its customers consistent with its parent company's policies:

> … [D]irectors, officers, and employees are expected to protect the assets of the Company and use them efficiently to advance the interests of the Company. Those assets include tangible assets and intangible assets, such as confidential information of the Company or personal information held by the Company. No director, officer, or employee should use and/or disclose at any time during and/or subsequent to employment and/or other service to the Company, without proper authority and/or express permission, personal or confidential information obtained from any source in the course of the Company's business.

37.     Defendant Krawczyk's and Surf Club's conversion of the GPS NASA and GPS Coastal Academy social media pages, and specifically the changes to them, have falsely taken credit for the benefit of Surf Club many accomplishments of GPS.

38.     The changes to the GPS NASA and GPS Coastal Academy have misled and confused those who have seen it. The problematic content has spread as certain individuals who

have reviewed the problematic social media pages have shared it to their social media friends. On the GPS NASA social media itself, individuals have posted questions and comments, such as "So does this mean no more GPS Coastal & GPS NASA"; "I'm still as confused as ever. Who will be at Cathedral if GPS is planning on sticking around."; "Is GPS Charleston going to strictly be James Island?"; "no idea either! I read this and then saw the email. I feel kinda dumb but didn't realize NASA could just break off and go on its own … it's all super odd."

39.     In addition to Surf Club hijacking five years of entries on social media pages by GPS as if the accomplishments were their accomplishments, some page falsely have GPS's name in locations that make it appear as if GPS is affiliated with Surf Club.

40.     These acts are just a part of the overall false advertising and promotion scheme, as well as just a part of the overall conspiracy and scheme by all Defendants to divert the business, employees, coaches and customer relationships from GPS to Surf Club.

**Prosser Coordinates the Launch of Surf Club New England**

41.     On or about July 1, 2016, in exchange for continued employment and other consideration including training and leadership development that GPS provided, Prosser undertook in a signed writing not to compete with GPS or its affiliates for 12 months following the termination of his employment. A copy of this non-compete agreement is attached hereto as Exhibit D.

42.     In connection with his non-compete undertakings, Prosser also undertook in writing to pay GPS its attorneys' fees for enforcing this non-competition provision and other contractual obligations.

43.     Nevertheless, while working for GPS or within days and weeks of leaving GPS, Prosser engaged in competition with GPS, solicited employees, and solicited customers.

44.     For example, closely coordinated, timed and aligned with the actions of Krawczyk, on or about February 20, 2020, in coordination with Union Point, Prosser sent an email, as an advertisement and promotion, to a wide audience that would be expected to reach GPS constituents, stating in pertinent part:

> I am delighted to announce that Surf Nation is coming to New England. Soon to be launched in early March, New England Surf will offer a number of Spring programs. … This coming April Vacation will be offering our first Competitive Player Program designed for Club Players and those with a passion for Soccer looking for a competitive camp during the School break. Please see flyer attached a link below to register.

45.     A copy of this February 20, 2020 email and accompanying flyer is attached hereto as Exhibit E. The flyer attached to the February 20, 2020 email prominently displayed the Union Point sports complex as the location of April 2020 events for Surf Club. *See* Exhibit E. GPS customers naturally associate Union Point's sports complex with GPS, but now Union Point is working with Surf Club to help it launch in competition with GPS.

46.     Certain families and individuals loyal to GPS have informed GPS that, in or about January and February 2020, certain of GPS's former employees have contacted them, tried to move them to Surf Club, and/or disparaged GPS.

**Surf Club's Active and Knowing Participation in Wrongdoing**

47.     Between January 17, 2020 and January 24, 2020, representatives of GPS communicated with Brian Enge, the CEO of Surf Club. During these communications, GPS informed Brian Enge in substance multiple times that Joseph Bradley, Peter Bradley and Defendant Prosser had signed onto non-competition obligations with GPS. During these communications, Enge was evasive but specifically denied working at all with the Bradleys, despite the arrangements that he has made with their business, Union Point.

48.     Enge knew of, authorized and/or ratified the wrongdoing described above by

12

Defendants Prosser and Krawczyk, and is therefore vicariously liable for their actions described herein.

**Count One**
**(Lanham Act Violations Against Defendants Surf Club and Krawczyk)**

49.     GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

50.     By in or about February 2020 and since, as more fully set forth above, Defendants Surf Club and Krawczyk made false and misleading statements of fact including those described above taking credit on social media pages for the historic operations, activities, accomplishments, and reviews of GPS NASA and GPS Coastal Academy. These statements in advertising and promotion were literally false, as well as misleading in their context.

51.     Defendants Surf Club's and Krawczyk's false and misleading statements either deceived or had the capacity to deceive a substantial segment of customers and other constituents in the youth soccer industry.

52.     Defendants Surf Club's and Krawczyk's deception is ongoing, material and likely to influence purchasing decisions, including those by youth soccer participants who inaccurately perceive an association between Surf Club and GPS, and/or attribute to Surf Club all the accomplishments, history and reviews of GPS.

53.     GPS's programs and Surf Club's programs at issue consist of products and services that are used, advertised, promoted, sold, and transported in interstate commerce.

54.     GPS has been injured and/or is likely to be injured by Defendants Krawczyk and Surf Club's false and misleading statements in connection with the GPS NASA and GPS Coastal Academy social media pages, improperly causing customers to attribute GPS's goodwill to Surf Club and to choose Surf Club over GPS, thereby resulting in lost sales and profits for GPS.

55.     Defendants Krawczyk's and Surf Club's false and misleading statements violate the Lanham Act, and they are liable to GPS for all reasonably foreseeable damages that these Defendants have caused and will likely cause, as well as an award of reasonable attorneys' fees and expenses incurred commencing and maintaining this action.

56.     GPS is also entitled to preliminary and permanent injunctive relief under the Lanham Act precluding Defendants Krawczyk and Surf Club from engaging in any advertisements or promotions that make false or misleading statements, and requiring corrective advertising and promotion. Specifically, Defendants Krawczyk and Surf Club should be preliminarily and permanently enjoined: (a) preventing them and their agents from converting any other social media pages used or managed by GPS and containing GPS's content; (b) preventing them and their agents from adding, causing to be added or maintaining Surf Club logos or trademarks to social media pages containing content that GPS has created or managed; (c) preventing them and their agents from placing any more entries on the GPS NASA page or the GPS Southside Page; (d) preventing them and their agents from accepting business from customers of GPS NASA and GPS Southside at the time of the conversion of their social media pages; and, (e) requiring corrective advertising and promotion by them, including information in a format acceptable to GPS on the GPS NASA page and GPS Southside page that states prominently: "The entries and reviews on this page between May 2015 and February 23, 2020 concern GPS operations and do not reflect any services provided by other entities such as San Dieguito Surf Soccer Club, Inc."

**Count Two**
**(Tortious Interference Against All Defendants)**

57.     GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

58.     GPS has had contractual rights with its customers and employees, as well as reasonable expectations of prospective economic advantage with them. An example of such contractual relations includes GPS's contract with Coastal Academy, with which Prosser and Krawczyk interfered as described above, in furtherance of the Defendants' conspiracy.

59.     GPS had contractual rights and a reasonable expectation of prospective economic advantage with Prosser and Krawczyk, including those arising from non-competition obligations that these individuals undertook.

60.     When Prosser and Krawczyk coordinated efforts to contact GPS customers to convert them to Surf Club, they did so as faithless employees while one or both of them still worked for GPS, and coordinated with its competitor Surf Club, made misleading statements, and tortiously interfered with GPS's customer relationships, knowing the intimate details of those relationships after accessing and misappropriating such confidential and proprietary information belonging to GPS.

61.     Surf Club also intentionally and willfully interfered with (a) GPS's customer relationships, and (b) GPS's relationships with Prosser and Krawczyk. Prior to February 2020, Surf Club knew that Prosser and Krawczyk had non-compete obligations owed to GPS. Nevertheless, Surf Club tortiously interfered with GPS's relationships with Prosser and Krawczyk by causing them to breach their non-competition obligations.

62.     The Defendants have acted with improper means and improper motives, as described above.

63.     The Defendants' tortious interference with GPS's contractual rights and reasonable expectations of economic advantage has directly and foreseeably caused GPS to suffer substantial injuries for which Defendants are liable.

**Count Three**
**(Breach of Non-Competition Obligations Against Prosser and Krawczyk)**

64.    GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

65.    Defendants Prosser and Krawczyk have breached their non-competition obligations owed to GPS by working for Surf Club, as well as by engaging in improper conduct to divert business, employees, coaches and customer relationships from GPS to Surf Club consistent with the allegations set forth above.

66.    Surf Club has authorized Defendants Prosser and Krawczyk to engage in competition with GPS and has ratified their wrongful acts described herein, thereby making Surf Club vicariously liable for their wrongdoing.

67.    Defendants Prosser's and Krawczyk's breaches of non-competition obligations, both before and after leaving their employment with GPS, have directly and foreseeably caused GPS to suffer substantial injuries for which Defendants are liable.

68.    There is no adequate remedy at law because, among other things, total damages cannot be fully calculated with certainty and multiple actions would have to be filed in order to remedy the wrongs that have been caused.

69.    The balance of hardships tip decidedly in GPS's favor.

70.    Defendants Prosser and Krawczyk should be preliminarily and permanently enjoined from competing with GPS for the next 12 months.

**Count Four**
**(Conspiracy Claim Against All Defendants)**

71.    GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

72.     From in or about late 2019 through the present, Defendants have combined, conspired and acted in concert with each other and others, including Tommaso Trevisan, Tyral Hicken, and Union Point, in a campaign designed to move business, employees, coaches and customer relationships from GPS to Surf Club through false advertising and promotion, breaches of non-competition agreements, false disparagement, and other improper conduct.

73.     In addition, during this time period, by acting together, the Defendants exerted a unique coercive power to accomplish their improper objective of misappropriating employees, coaches and customers from GPS to Surf Club.

74.     Defendants intentionally agreed with each other to accomplish their unlawful ends by unlawful means.

75.     Each of the Defendants engaged in overt acts in furtherance of the conspiracy. The false advertising and promotion concerning the GPS NASA and GPS Coastal Academy social mediate pages constituted acts in furtherance of the conspiracy. Prosser's improper solicitation of GPS's customers for Surf Club constituted acts in furtherance of the conspiracy.

76.     Defendants' conspiracy has directly and foreseeably caused GPS to suffer substantial injuries for which Defendants are liable.

**Count Five**
**(Chapter 93A)**

77.     GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

78.     Defendants' actions constitute unfair and deceptive acts within the meaning of Chapter 93A.

79. Defendants' actions rose to a level of rascality beyond the acceptable rough and tumble of the business world. Rather, Defendants engaged in deceptive and improper conduct designed to hurt GPS.

80. Defendants actions occurred primarily and substantially in Massachusetts, and they directed their misconduct at issue at causing harm to a Massachusetts entity that has been and would be suffered primarily and substantially in Massachusetts, the location of GPS's headquarters.

81. Defendants committed their misconduct described herein knowingly, intentionally, and willfully.

82. Defendants are liable to GPS for all the damages that they have caused, as well as multiple damages, and an award of reasonable attorneys' fees and expenses incurred in this action.

**Count Six**
**(Violations of the South Carolina Unfair Trade Practices Act)**

83. GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

84. In the alternative to Chapter 93A, for any acts deemed to have occurred primarily and substantially in South Carolina, GPS seeks relief against Defendants Surf Club and Kraczyk under the South Carolina Unfair Trade Practices Act, Section 39-5-10, et seq.

85. GPS has been injured or is likely to be injured by Defendants Surf Club's and Krawczyk's false and misleading statements in advertising and promotion resulting in lost sales and profits, for which they are liable to GPS.

18

## Count Seven
### (Common Law Unfair Competition)

86.     GPS repeats each of its allegations in the foregoing Paragraphs of this Complaint as if fully set forth herein.

87.     The above-described actions constitute unfair competition by all Defendants.

88.     Defendants' conduct has resulted in damages, including loss of goodwill, expenditure of GPS's resources to address Defendants' conduct, and loss of revenue and profits.

89.     Defendants' conduct has been willful and intentional and will continue unless enjoined by this Court.

90.     As a result of Defendants' conduct, GPS is suffering and will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law unless Defendants are preliminarily and permanently enjoined.

## PRAYER FOR RELIEF

WHEREFORE, GPS prays for the following relief:

1.  That judgment be entered in its favor on all claims against it and on all causes of action set forth in this Complaint;

2.  That the Court award to GPS compensatory and multiple damages, with pre-judgment and post-judgment interest, in the maximum amount allowed by law;

3.  That the Court award to GPS its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest under the Lanham Act and as a matter of contractual right as to certain defendants;

4.  That the Court preliminarily and permanently enjoin Defendants, requiring each of them to cease false advertising and promotion, to cease violating and causing the violation of

non-competition agreements, and to cease engaging in unfair competition as set forth in more detail above; and,

5. That the Court award to GPS any and all further and other relief to which it may be entitled at law or in equity.

**GPS Demands a Jury on All Issues So Triable**

Respectfully submitted,

/s/Phillip Rakhunov
Barry S. Pollack (BBO#642064)
Phillip Rakhunov (BBO#663746)
POLLACK SOLOMON DUFFY LLP
101 Huntington Avenue, Suite 530
Boston, MA  02199
617-439-9800 (Tel)
617-960-0490 (Fax)
bpollack@psdfirm.com
Dated:  March 11, 2020        prakhunov@psdfirm.com

**<u>Certificate of Service</u>**

The undersigned certifies that this document, filed through the ECF system, will be electronically served on counsel who are registered users of ECF on March 11, 2020.

<u>/s/ Phillip Rakhunov</u>